## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEX BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:15-cv-01273-SGC |
| | ) | |
| CITY OF BIRMINGHAM, a | ) | |
| Municipal Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Alex Brown, originally filed this matter in the Circuit Court of Jefferson County, asserting claims under both federal and state law against the defendants, Officer Marchello Henry and the City of Birmingham, as well as fictitious parties. (Doc. 1-1). On July 29, 2015, the defendants removed to this court under 28 U.S.C. §§ 1441 and 1443. (Doc. 1). The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 6). Presently pending is the defendants' motion for summary judgment. (Doc. 13). The motion is fully briefed and ripe for adjudication. (*See* Docs. 14-17). For the reasons that follow, the motion will be granted in part and denied in part.

## I.    FACTS

Henry has been a police officer with the City of Birmingham for over eight years. (Doc. 14 at 3). Brown is a Birmingham resident. (*Id.*). This lawsuit arises

from events surrounding Henry's apprehension and arrest of Brown on July 20, 2013. (*Id.* at 4). Henry and his partner were on patrol when Henry noticed the driver of a silver minivan drinking a beer. (*Id.*). Henry saw passengers in the van, including a man sitting directly behind the driver. (*Id.*). Henry attempted to perform a traffic stop, but the minivan fled. (*Id.*). Due to safety concerns, Henry was unable to pursue the minivan directly by cutting across traffic; instead, he turned onto a side street. (*Id.* at 4-5).

Henry lost visual contact with the van and drove through the area searching for approximately five minutes. (Doc. 14-2 at 33-34). As Henry continued his search, he saw Brown walking on a sidewalk; Henry thought Brown looked like the passenger who had been sitting behind the driver of the silver minivan. (Doc. 14 at 4-5). Henry attempted to speak with Brown to determine whether he was the occupant of the minivan, but Brown fled on foot. (*Id.* at 5). Henry turned on his lights and siren, called for back-up, and drove his vehicle in pursuit of Brown. (*Id.*).

The chase proceeded down a narrow alley with a width of approximately eight to ten feet. (Doc. 14 at 5; Doc. 14-2 at 45-46). Henry pursued in his vehicle at speeds of between five and fifteen miles per hour until Brown fell down, injuring his left leg. (Doc. 14 at 21; Doc. 14-2 at 45-47). At the location where Brown fell, the width of the alley was further constricted by the presence of a

telephone pole. (Doc. 14-2 at 45-46). Henry apprehended, handcuffed, and arrested Brown for disorderly conduct. (Doc. 14 at 5). Paramedics responded to the scene and treated abrasions to Brown's left leg; Henry also transported Brown in his patrol vehicle to a nearby hospital, where Brown refused treatment. (*Id.* at 5-6). Henry then took Brown to the City Jail; he was released on bond after approximately two to three hours. (Doc. 14-1 at 48). On the evening of his release, Brown sought hospital treatment for his left leg injury. (*Id.*). Brown was subsequently charged with and, after a jury trial, convicted of disorderly conduct in *City of Birmingham v. Alex Deon Brown,* No. 2014-002966.00 (Jefferson Cty. Cir. Ct. *entered* March 23, 2016). (Doc. 14 at 6; Doc. 14-11). Brown did not appeal the conviction.

There are three principal factual disputes concerning the events leading to Brown's arrest. First, Brown contends that during their initial encounter, Henry was attempting to draw his firearm. (Doc. 16 at 4). Henry denies this. (Doc. 17 at 2). Next, Brown contends the chase ended when Henry hit him with his patrol vehicle and ran over his left leg. (Doc. 16 at 4). Henry denies that his vehicle made any contact with Brown. (Doc. 17 at 2). Finally, Henry contends Brown ran across a busy street and disrupted traffic while attempting to flee. (Doc. 14 at 5). This was the basis of the disorderly conduct charge, but Brown contends Henry

charged him with disorderly conduct in order to justify his aggressive tactics, as well as hitting him and running over his leg. (Doc. 16 at 4).

Based on these facts, Brown asserts claims for negligence and negligent supervision under Alabama law, as well as claims under federal law for excessive force and false arrest, false imprisonment, and unlawful detention. (Doc. 1-1 at 2-4). The complaint names Henry and the City as defendants; Henry is named in both his individual and official capacity.[1] (Doc. 1-1 at 1).

## II.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a summary judgment motion, the court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart*

---

[1] The complaint also names numerous fictitious parties as defendants. Generally, fictitious party pleading is not permitted in federal court. *See Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010). Accordingly, any claims against fictitious parties will be dismissed. *See White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1281-82 (N.D. Ala. 2015).

*Stores, Inc.*, 510 F. App'x 810, 813 (11th Cir. 2013).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

## III.  DISCUSSION

As noted above, Brown asserts claims under both federal and state law against the City and Henry.  The claims against each defendant will be addressed in turn.  As explained below, the excessive force claim against Henry in his personal capacity will survive summary judgment; all other claims will be dismissed as a matter of law.

### A.  <u>Officer Henry</u>

As to Henry, Brown asserts federal claims for excessive force and false arrest, imprisonment, and detention, as well a state law claim for negligence.[2]  The federal claims—and the applicable qualified immunity defenses—will be addressed first, followed by an analysis of the negligence claim and state law immunities.  As explained below, under the summary judgment standard: (1) the false arrest claim is barred by qualified immunity; (2) qualified immunity does not preclude the personal capacity claim for excessive force; and (3) Henry is immune from liability on Brown's negligence claim.

---

[2] While Brown's complaint asserts this claim under the heading of negligence, the claim also alleges reckless, willful, wanton, and malicious behavior.  (Doc. 1-1 at  2).  Accordingly, the court will construe Brown's negligence claim as alleging more than negligent behavior.  Next, while the complaint does not specify the target of the claim for negligent hiring, training, and supervision, it is clear this claim is aimed exclusively at the City.

Before turning to the individual claims, it must be noted that Brown's claims naming Henry do so in both his personal and official capacities. "Personal-capacity claims seek to impose personal liability upon a government official for actions taken under color of state law." *Graham v. Kentucky,* 473 U.S. 159, 166 (1985). Meanwhile, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* Accordingly, the Eleventh Circuit has recognized that an official capacity suit is in reality a suit against the entity. *Id.*; *Owens v. Fulton County,* 877 F.2d 947, 951 n.5 (11th Cir. 1989) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents."). Where the complaint names a local government entity as a defendant, the court should dismiss as redundant the official capacity claims against the individual defendant. *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991).

Here, the official capacity claims against Henry are duplicative of the claims against the City. Accordingly, the claims against Henry in his official capacity will be dismissed; only the personal capacity claims against Henry will be considered.

### 1.    Federal Claims and Qualified Immunity

Qualified immunity offers complete protection for government officials—including municipal officers—sued in their individual capacities if their conduct

"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see Busby*, 931 F.2d at 770. To defeat a qualified immunity defense on summary judgment, a plaintiff must satisfy two requirements: (1) the facts taken in the light most favorable to the plaintiff must establish a constitutional violation; and (2) the constitutional violation must infringe on a "clearly established" right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see Hope v. Pelzer,* 536 U.S. 730, 739 (2002). A plaintiff must satisfy both requirements to defeat an official's assertion of qualified immunity. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow,* 457 U.S. at 818.

Here, it is undisputed that investigation, pursuit, apprehension, and arrest of criminal suspects are among a municipal police officer's discretionary functions. *Brown v. City of Huntsville,* 608 F.3d 724, 741 (11th Cir. 2010). Therefore, the court will analyze whether Brown's federal claims against Henry are barred by qualified immunity.

a.     False Arrest, Imprisonment, and Detention

Brown's claim for false arrest, imprisonment, and detention hinges on his contention that Henry manufactured the disorderly conduct charge to excuse the aggressive tactics he employed to apprehend Brown.  Therefore, the central inquiry is whether, at the time of Brown's arrest, Henry had arguable probable cause to believe Brown had committed the offense of disorderly conduct.  *See Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990).  Arguable probable cause is present where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law."  *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir. 1994).  The Eleventh Circuit has repeatedly held that arguable probable cause is distinct from actual probable cause.  *See, e.g., Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993).

Alabama law defines disorderly conduct—a Class C misdemeanor—as including the obstruction of "vehicular or pedestrian traffic."  ALA. CODE. § 13A-11-7(a)(5), (b).  Brown contends that, because Henry admits Brown was not subject to arrest when he initially attempted to conduct the investigatory interview, Brown's subsequent apprehension and arrest constitute a false arrest.  (Doc. 16 at 12-14).  Henry acknowledges that, at the time he first encountered Brown and attempted to speak to him—to investigate the drinking driver of the silver

minivan—Brown was not subject to arrest. (Doc. 14-2 at 39-42). However, Henry contends Brown committed the crime of disorderly conduct when he fled across a busy street, causing vehicles to brake and swerve to avoid hitting him. (*Id.* at 42). Brown's opposition does not explicitly refute Henry's contention that he obstructed traffic when he ran across the road. Accordingly, even accepting the facts in the light most favorable to Brown, it is undisputed that he impeded traffic while fleeing, constituting disorderly conduct under Alabama law. As such, Henry had arguable probable cause to arrest him for that offense. *See Brown,* 608 F.3d at 735; *Gold v. City of Miami*, 121 F.3d 1442, 1445-46 (11th Cir. 1997).

Even if Brown had explicitly contradicted Henry's testimony that he impeded traffic, Brown's subsequent conviction would preclude reconsideration of this factual issue. Brown was convicted of disorderly conduct following a jury trial in Jefferson County Circuit Court. The jury verdict noted Brown was guilty "of Disorderly Conduct as charged in the complaint." (*See* Doc. 14-11). The complaint, in turn, alleged Brown impeded "the flow of traffic by running in the street. Cars swerved to prevent from hitting" him, in violation of section 13A-11-7 of the *Alabama Code*. (*See* Doc. 14-12). Accordingly, the doctrine of issue preclusion limits this court from reconsidering whether Brown committed disorderly conduct and, by extension, whether Henry had arguable probable cause to arrest him for the offense. S*ee Willingham v. Loughnan*, 321 F.3d 1299, 1301

(11th Cir. 2003). Specifically, the summary judgment standard notwithstanding, issue preclusion would prevent the court from accepting any assertion that Brown did not impede traffic while fleeing from Henry.

For the foregoing reasons, Brown had arguable probable cause to arrest Henry for disorderly conduct. Therefore, Brown is entitled to qualified immunity on the claim for false arrest, imprisonment, and detention. *See Gold*, 121 F.3d at 1445-46; *Brown,* 608 F.3d at 735.

b.    Excessive Force

Next, the court turns to whether Henry is entitled to qualified immunity on Brown's claim of excessive force related to his apprehension and arrest. The complaint alleges Henry "maliciously and recklessly ran over [Brown's] left leg." (Doc. 1-1 at 2). Brown claims that while he was running down the alley, Henry's cruiser "bumped" his leg, causing him to fall. (Doc. 14-1 at 28). Brown also contends the tire of Henry's cruiser ran over his left leg. (*Id.* at 33). Henry's denial of these assertions does not entitle him to summary judgment, where the facts are viewed in the light most favorable to Brown.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting *Graham,* 490 U.S. at 396). While an

arresting officer is permitted to use some force, the reasonableness of that force depends on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Brown*, 608 F.3d at 737–38 (quoting *Vinyard,* 311 F.3d at 1347). The use of force is analyzed "on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* at 738 (quoting *Post,* 7 F.3d at 1559). This inquiry is wholly objective; the officer's subjective intent or belief is not considered. *Id.* (citing *Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir. 2008)).[3] In the end, a law enforcement officer is entitled to qualified immunity if "an objectively reasonable officer in the same situation could have believed that the force used was not excessive." *Vinyard,* 311 F.3d at 1346. However, the Supreme Court has noted that courts performing this inquiry must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

To determine whether an intrusion on Fourth Amendment interests exceeds the governmental interest, the Eleventh Circuit considers: "(1) the need for the application of force, (2) the relationship between the need and the amount of force

---

[3] Thus, to the extent Henry contends he is entitled to summary judgment because he did not subjectively intend to hit or injure Brown, the argument fails. (*See* Doc. 14 at 18).

used, [and] (3) the extent of the injury inflicted." *Vinyard,* 311 F.3d at 1347. The need for the application of force is determined by considering "the severity of the crime, the danger to the officer, and the risk of flight." *Lee,* 284 F.3d at 1198. The "reasonableness of the force applied also is measured as of the precise moment it is administered." *Summers v. Martin*, No. 12-1816-AKK, 2013 WL 6499366, at *15 (N.D. Ala. Dec. 11, 2013) ("Events that occurred prior to that moment, though perhaps giving factual context to the use of force, are not probative of the reasonableness of the decision to use force.").

Here, viewing the facts in the light most favorable to Brown, the amount of force used by Henry was unnecessary and disproportionate to the government's interest in apprehending him. Resolving factual disputes in Brown's favor, he was walking on a sidewalk when Henry pulled over and, while reaching for his sidearm, attempted to speak with Brown. Brown was frightened and fled on foot. Refusing to speak to or running from authorities, when not otherwise subject to arrest, is not a crime. Both parties agree that, even as Brown fled, he had broken no laws and was not subject to arrest. It was only when Brown ran across a road and impeded traffic that he was subject to arrest for disorderly conduct, a Class C misdemeanor. Henry pursued Brown in his cruiser and followed him down an unoccupied one-lane alley. The pursuit ended when Henry struck Brown with his

cruiser, knocking Brown to the ground and running over his left leg.[4]  While the record does not reveal whether Henry instructed Brown that he was under arrest prior to hitting him with his cruiser, drawing inferences in Brown's favor suggests he did not.[5]

Applying these summary judgment facts, disorderly conduct clearly is not a serious offense justifying the use of significant force.  *See Summers*, 2013 WL 6499366, at *15 (disorderly conduct, obstructing governmental operations, and violations of the Alabama Rules of the Road Act are not serious offenses in the context of excessive force claim); *Baltimore v. City of Albany, Ga.*, 183 F. App'x 891, 899 (11th Cir. 2006) (violation of municipal open container ordinance not severe).

Next, while Henry contends Brown posed a threat to himself and drivers when he impeded traffic, that threat had passed once Brown crossed the road.  At the precise moment when Henry's vehicle struck Brown, he was running down an unoccupied, single-lane alley.  While Brown had demonstrated a willingness to threaten his own safety and the safety of others by running across a busy street,

---

[4] At least one Eleventh Circuit decision has held that a purely accidental application of force cannot support a Fourth Amendment claim for excessive force.  *Speight v. Griggs*, 620 F. App'x 806, 809 (11th Cir. 2015) ("there is no clearly established right to be free from the accidental application of force during arrest, even if that force is deadly").  However, Henry does not contend he accidently struck Brown with his cruiser.  Instead, Henry contends his vehicle never made contact with Brown.  Given the summary judgment standard, this factual dispute is resolved in Brown's favor for purposes of this motion.

[5] The parties do not definitively address this question.

there was no immediate threat at the precise moment of impact. *See Graham,* 490 U.S. at 396 (analyzing "whether the suspect poses an *immediate* threat to the safety of others") (emphasis added). Brown was unarmed and not threatening officers or anyone else at the time of his apprehension. There was no threat whatsoever to Henry. Accordingly, this factor weighs in favor of Brown.

The only factor decisively weighing against Brown is that he was fleeing at the time of his apprehension. But the surrounding circumstances provide mitigating context for Brown's flight. This flight began when Henry attempted to speak to Brown, whom he thought was a passenger in a vehicle that fled after Henry witnessed the driver drinking. Brown's flight only became a crime after he impeded traffic, committing disorderly conduct. It appears Henry never advised Brown he was under arrest. Therefore, while Brown's flight weighs against him, it is not determinative to the issue of excessive force.

"At bottom, 'we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Gaillard*, 562 F. App'x 870, 875 (11th Cir. 2014) (quoting *United States v. Place,* 462 U.S. 696, 703, (1983)). To make this determination, the court "must consider the risk of bodily harm that [Henry's] actions posed to [Brown] in light of the threat to the public that [Herny] was trying to eliminate." *Id.* (quoting *Scott v. Harris,* 550 U.S. 372, 383

(2007)).   Under the facts applicable on summary judgment, it was objectively unreasonable to hit Brown with the patrol car and run over his left leg, even in light of the rapidly unfolding events Henry faced.

Turning to Brown's injuries, he received lacerations to his left leg.[6]  While this is not a catastrophic injury, and certainly not the type of severe injury one might expect as a result of a collision between a vehicle and a pedestrian, courts within this circuit have held that lacerations can support a Fourth Amendment excessive force claim.  *See McRae v. Knapp*, No. 11-0361, 2012 WL 2681832, at *7 (S.D. Ala. July 6, 2012).  The Eleventh Circuit does not require evidence of a catastrophic injury to sustain an excessive force claim on summary judgment.  *See Vinyard,* 311 F.3d at 1348 (use of pepper spray constituted excessive force).  Accordingly, for summary judgment purposes, Henry's actions were an unreasonable intrusion on Brown's Fourth Amendment rights.

Having established a constitutional violation sufficient to survive summary judgment, Henry must also show that right was clearly established at the time in order to overcome qualified immunity.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

[6] A portion of Henry's brief argues that Brown did not have any injuries, much less any severe injuries.  (Doc. 14 at 18).  While Brown did not break any bones or receive stitches, it is undisputed that he was injured.  Indeed, other portions of Henry's brief acknowledge this fact.  (*Id.* at 21) ("Plaintiff received lacerations on this left leg.").  Even setting aside Brown's post-release treatment records, his injury is evident given that Henry called paramedics—who treated Brown at the scene—and took him to a hospital before proceeding to the jail.

reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier,* 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* As noted by the Eleventh Circuit:

> [P]laintiffs can demonstrate that the contours of the right were clearly established in several ways. First, the plaintiffs may show that "a materially similar case has already been decided." *Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Second, the plaintiffs can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (citing *Hope,* 536 U.S. at 741). Finally, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." *Id.* (citing *Lee,* 284 F.3d at 1199). Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [State] Supreme Court. *See id.*

*Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (parallel citations omitted).

In *Gaillard*, the plaintiff was a passenger in a vehicle suspected of transporting multiple kilos of cocaine. Officers attempted to pull over the vehicle, but it fled, leading the officers on a high-speed chase. After the suspect's vehicle spun out and came to a stop, the plaintiff exited and fled on foot. The defendant officer, who was still driving, ran over the plaintiff, killing him. In analyzing whether clearly established law would have alerted the defendant that this conduct violated the Fourth Amendment, the Eleventh Circuit explained:

In *Tennessee v. Garner,* 471 U.S. 1 (1985), the Supreme Court explicitly addressed "the constitutionality of the use of deadly force to prevent the escape of an apparently unarmed suspected felon" fleeing on foot. *Id.* at 3. The Supreme Court concluded that "such force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.*

To be sure, "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' " *Scott,* 550 U.S. at 382. Instead, "*Garner* was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation," *id.* (citations omitted); specifically, the scenario of an unarmed burglary suspect fleeing on foot, *see Garner,* 471 U.S. at 21. Accordingly, *Garner* does not constitute clearly established law for cases where, for example, the officer was threatened with a deadly weapon, *see Terrell,* 668 F.3d at 1257, or when a felon is "set on avoiding capture through vehicular flight and persons in the immediate area are at risk from that flight," *see Brosseau v. Haugen,* 543 U.S. 194, 200 (2004).

But, *Garner* does clearly establish the law, even in a car chase scenario, where the suspect "did not use or did not threaten to use his car as a weapon." *Morton v. Kirkwood,* 707 F.3d 1276, 1283 (11th Cir.2013); *Vaughan v. Cox,* 343 F.3d 1323, 1327–32 (11th Cir.2003). And, of course, *Garner* clearly established the law for the use of deadly force in the pursuit of an unarmed suspected felon fleeing on foot. *See* 471 U.S. at 21.

Viewed in the light most favorable to Plaintiff Gaillard, the facts here are materially similar to *Garner*: Officer Commins realized that the vehicle chase was over and that Gaillard was an unarmed suspected felon fleeing on foot. In that scenario, *Garner* clearly put Officer Commins on notice that the use of deadly force would be objectively unreasonable unless he had "probable cause to believe that [Gaillard] pose[d] a significant threat of death or serious physical injury to [Commins] or others." 471 U.S. at 3. *Garner* thus serves as clearly established law for this case.

*Gaillard*, 562 F. App'x at 876-77 (11th Cir. 2014) (parallel citations omitted). Accordingly, the Eleventh Circuit affirmed the district court's rejection of the officer's claim of qualified immunity on the plaintiff's excessive force claim. *Id.* at 877.

The facts of *Gaillard* are not identical to the facts presented in this matter. For instance, the defendant in *Gaillard* hit the plaintiff at a much higher rate of speed than Henry hit Brown.[7]  However, *Galliard* is instructive nonetheless, particularly because the plaintiff in *Gaillard*: (1) was suspected of a more serious offense than disorderly conduct; and (2) had, just prior to impact, exited a vehicle that had led officers on a dangerous high-speed chase.  Additionally, although *Galliard* is not binding and was not decided until after the events giving rise to this matter, it relies on binding Eleventh Circuit and Supreme Court cases preceding Brown's arrest.  In short, clearly established law put Henry on notice that striking Brown with his patrol car was unlawful.  Accordingly, Henry is not entitled to qualified immunity on Brown's personal capacity claim for excessive force.

---

[7]  In *Galliard*, the court characterized the defendant's conduct as constituting deadly force. Neither party has addressed whether Brown's conduct here constituted deadly force.  The Eleventh Circuit has defined "deadly force" as force that creates a substantial risk of causing death or serious bodily injury.  *Pruitt v. City of Montgomery,* 771 F.2d 1475, 1479, n.10 (11th Cir. 1985).  While the court has not found a binding case addressing a relatively low-speed vehicle-on-pedestrian collision, the Supreme Court has held that the objective reasonableness standard applies to all Fourth Amendment excessive force claims, regardless of whether the challenged action constitutes deadly force.  *Graham*, 490 U.S. at 395.

For the foregoing reasons, genuine issues of material fact preclude entry of summary judgment in favor of Henry on Brown's claim for excessive force. A jury may very well doubt Brown's testimony that Henry hit and ran over his leg, particularly in light of the relatively minor injuries he appears to have received. However, in light of the divergent facts offered by the parties and the arguments presented on summary judgment, the court cannot make this credibility determination at this stage of the proceedings.

### 2. Negligence and State Law Immunities

As previously stated, the complaint asserts a claim for negligence, alleging Henry acted "negligently, carelessly, recklessly, willfully, and wantonly." Alabama law provides two types of immunity to personal capacity claims against state actors: common law state-agent immunity and statutory discretionary-function immunity. As explained below, Herny is immune from Brown's claim for negligence.

"State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles,* 852 So. 2d 117, 122 (Ala. 2002). In *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court explained that Alabama's state-agent immunity doctrine bars suit against law enforcement officers effecting arrests, except to the extent an officer acts "willfully, maliciously, fraudulently, in

bad faith, beyond his or her legal authority, or under a mistaken interpretation of law." *Id.* at 405. The Alabama Supreme Court formally adopted the *Cranman* plurality's state-agent immunity test in *Ex parte Butts,* 775 So. 2d 173, 177-78 (Ala. 2000).

Discretionary-function immunity protects law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. ALA. CODE § 6-5-338(a) ("Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."). *Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory discretionary-function immunity. *Ex parte City of Tuskegee,* 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman,* 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)."). Accordingly, whether either doctrine applies will depend on application of the test set forth in *Cranman*. *Id.*; *see Brown*, 608 F.3d at 741.

The *Cranman* test employs a burden-shifting framework. A defendant bears the initial burden of demonstrating his or her actions constituted a function for which the defendant is entitled to immunity. *Ex parte Estate of Reynolds,* 946 So. 2d 450, 452 (Ala. 2006). "If the State agent makes such a showing, the burden

then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.* As to the Henry's initial burden, there is no doubt that making an arrest is a discretionary function entitling him to state law immunity. *Brown*, 608 F.3d at 741.[8] Accordingly, to the extent the complaint alleges negligence, this claim is self-defeating in the face of Henry's invocation of immunity under state law.

To overcome state-law immunities, Brown must show that Henry acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority by striking and running over Brown with his vehicle. "A State agent acts beyond authority and is therefore not immune when he or she 'fails to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (alterations incorporated) (quoting *Ex parte Butts,* 775 So. at 178). Here, Brown has offered no arguments or evidence to suggest Henry violated any applicable rules or regulations. Accordingly, Brown must show Henry acted willfully, maliciously, fraudulently, or in bad faith.

---

[8] Much of Brown's opposition in support of his negligence claim relies on arguments that he was falsely arrested. (Doc. 16 at 6-8). As noted above in Section III.A.1.a., Henry is entitled to qualified immunity on the false arrest claim because he had arguable probable cause to arrest Brown for disorderly conduct. To the extent Brown's negligence claim is based on his purportedly false arrest, it fails for the same reasons. *See Brown*, 608 F.3d at 741-42.

Brown's complaint generally alleges Henry's actions were malicious and willful.[9]  However, the record is devoid of any evidence that Henry acted maliciously, willfully, or with any other state of mind.  This is perhaps somewhat understandable given the divergent stories told by the parties; Henry alleges Brown stumbled and fell while fleeing down the alley and never came in contact with the vehicle, while Brown alleges Henry hit him with the vehicle and ran over his left leg.  Nonetheless, Brown's opposition to summary judgment does not address the *Cranman* standard or Henry's arguments regarding entitlement to personal capacity immunity under state law.  (*See generally* Doc. 16).  Instead, Brown's response regarding the negligence claim argues it survives summary judgment against the City under Alabama law.  (*See* Doc. 16 at 5-8).  Brown's opposition does not even attempt to argue that Henry acted more than negligently or recklessly,[10] aside from parroting the complaint's general allegations.  (*See* Doc. 16 at 6).

Neither does Brown argue that the court can infer malicious, willful, or bad faith conduct on Henry's part.  The deficiencies in the briefing notwithstanding, even when construing the facts in the light most favorable to Brown, the court is

---

[9] *See* Doc. 1-1 at 2 ("Defendant maliciously and recklessly ran over the Plaintiff's left leg"); *id.* (specifically as to negligence claim, alleging Henry "negligently, carelessly, recklessly, willfully, and wantonly collided into the Plaintiff").

[10] *See* Doc. 16 at 6 (describing Henry's conduct as merely "negligent and careless"); *id.* at 7 (describing Henry's conduct as "careless and negligent"); *see also id.* at 9 (in response to arguments regarding claim for negligent supervision, describing Henry's actions as "negligent"); *id.* at 10 (in response to arguments regarding claim for excessive force, arguing "Henry negligently ran over the Plaintiff").

unable to draw the inference that Henry acted with more than negligence. For summary judgment purposes, Brown was running down a narrow alley when Henry's vehicle, traveling no more than fifteen miles per hour, bumped his leg, causing him to fall. The tire of the cruiser then ran over Henry's left leg. There is simply no evidence by which the court could infer that these events were the product of willful, malicious, or bad faith conduct by Henry. Such an inference might arise had the collision occurred on a two-lane road where Henry had room to maneuver and avoid Brown or if Henry had been driving at greater speeds. But the events here occurred in a narrow one-lane alley which was further constricted by the presence of a telephone pole. Likewise, an inference of maliciousness or willfulness might arise if Brown had presented any evidence that he heard or perceived the cruiser accelerate in the moments prior to impact. Here, the record is simply devoid of any evidence to suggest Henry's actions were malicious, willful, or taken in bad faith.

For the foregoing reasons, there are no genuine issues of material fact and Henry is immune from liability on Brown's negligence claim.

### B. <u>The City</u>

As explained below, the City is entitled to summary judgment on all of Brown's claims. Because Henry is entitled to summary judgment on Brown's

claims asserting wrongful arrest[11] and negligence,[12] these claims against the City fail as well.  The remaining claims against the City are addressed in turn.

### 1.    Negligent Supervision

Brown styles his second claim as "negligent supervision, hiring, and maintenance."  (Doc. 1-1 at 3).  Here, Brown points to no facts indicating the City was negligent in hiring Henry; neither does he make any argument to that effect. Accordingly, this claim is construed as alleging negligent training and supervision. However, even if Henry had presented any evidence to support a claim for negligent hiring, Alabama law does not recognize any of these claims against a municipality.  *See, e.g., Borton v. City of Dothan,* 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010) ("no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate"); *Hamilton v. City of Jackson,* 508 F. Supp. 2d 1045, 1058 (S.D. Ala. 2007) ("Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training") (citations omitted).

---

[11] Regarding wrongful arrest, "to impose § 1983 liability on a municipality, a plaintiff must show . . . that his constitutional rights were violated."  *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004); *Windham v. City of Fairhope*, 597 F. App'x 1068, 1073 (11th Cir. 2015) ("because we conclude the officers had actual probable cause to arrest Ms. Windham for disorderly conduct in obstructing vehicular traffic, there is no constitutional violation for which the City could be held responsible").

[12] Regarding negligence, "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune." *City of Crossville v. Haynes,* 925 So. 2d 944, 955 (Ala. 2005) (quoting *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003)).

Federal courts have granted summary judgment to municipalities on similar claims. *See Hamilton,* 508 F. Supp. 2d at 1058 (granting summary judgment to municipality on claim predicated on police chief's negligent supervision of officers because chief "cannot be liable for negligent training or supervision because no such cause of action exists under Alabama law" and further holding the "claim must also fail against the City [] since its liability, if any, flows derivatively from its employee"); *Ott v. City of Mobile,* 169 F. Supp. 2d 1301, 1314-15 (S.D. Ala. 2001) (dismissing claim against municipality for police chief's negligent failure to supervise officer because Alabama law "recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate"); *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1315 (S.D. Ala. 2011).

Accordingly, the City is entitled to judgement as a matter of law on Brown's claim for negligent training or supervision under Alabama law.

### 2. Excessive Force

"A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell,* 392 F.3d at 1289. "To

establish a city's deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of West Palm Beach, Fla.,* 561 F.3d 1288, 1293 (11th Cir. 2009) (quotation marks omitted); *see Belcher v. City of Foley,* 30 F.3d 1390, 1397-98 (11th Cir. 1994) ("Failure to train can amount to deliberate indifference when the need for more or different training is obvious . . . and when the failure to train is likely to result in the violation of a constitutional right."). To establish causation, it is necessary for a plaintiff to prove "that the deficiency in training actually caused the police officers' offending conduct." *Doe*, 799 F. Supp. 2d at 1313.

Here, the court has already determined that the individual capacity claim for excessive force against Henry will survive summary judgment. Accordingly, unlike the claim for false arrest, there is a constitutional violation for which the City could be held liable under § 1983. Turning to the second requirement, Brown arguably attempts to establish the City's deliberate indifference in two ways: (1) Henry's alleged conduct in this matter; and (2) Henry's past reprimands. As explained below, both arguments fail for related reasons.

The contours of Brown's arguments relying on Henry's conduct in this matter are altogether unclear. Liberally construed, it appears Brown contends that, because Henry used excessive force in this case, the need to train officers should

have been obvious to the City. Brown cites *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), to support this argument. (Doc. 16 at 16). *Rivas* did note that failure to adequately train peace officers may constitute a "policy" giving rise to § 1983 liability. *Id.* But in *Rivas*, the Eleventh Circuit noted the presence of evidence showing a pattern of previous similar violations about which the law enforcement agency knew but failed to correct. *Id.* Here, Brown does not point to any evidence of prior instances in which the City's officers misused their vehicles to strike or run over non-violent suspects fleeing on foot. Indeed, Brown does not identity a single prior instance of excessive force. Accordingly, Brown cannot rely on Henry's alleged conduct in this case to establish municipal liability. *Boynton v. City of Tallahassee*, 650 F. App'x 654, 662 (11th Cir. 2016) (granting summary judgment to municipality where plaintiff failed to present "evidence of a history of widespread prior abuse in the department involving" the type of excessive force at issue to put the City "on notice of the need for improved training and supervision") (citing *Gold*, 151 F.3d at 1351).

Next, while not presented in support of his excessive force claim, other portions of Brown's brief note that Henry had previously been the subject of a citizen complaint and a reprimand from the City. (Doc. 16 at 9). The citizen complaint arose after a traffic stop during which Henry told an abusive driver to calm down. (*Id.*; Doc. 14-2 at 12). The reprimand arose after Henry accidently

discharged his firearm without cause. (Doc. 16 at 9; Doc. 114-2 at 12-13). Both incidents occurred during Henry's first four years as a police officer. These incidents do not concern Henry's use of unnecessary force. Brown points to no evidence suggesting Henry had a history of using excessive force, much less that the City should have been aware of it. Accordingly, the City was not on notice of a need to train Henry on the appropriate use of force when apprehending fleeing suspects. *See Boynton*, 650 F. App'x at 662; *see also Doe*, 799 F. Supp. 2d at 1351 (granting summary judgment where there was "simply no factual basis to support an inference that the [municipality] was on notice that [the officer] required training and supervision to deter him from committing" the constitutional violation). Moreover, Brown does not contest the City's evidence, via an affidavit from Chief A.C. Roper, that all officers are trained regarding "all aspects of police work." (Doc. 14-13 at 4).

Finally, notwithstanding the failure to present any evidence showing the City's deliberate indifference, Brown has also failed to present any evidence showing—or supporting the inference—that any failure to train by the City caused Henry's use of excessive force here.

For the foregoing reasons, there are no genuine issues of material fact regarding the claim for excessive force against the City, and the City is entitled to judgment as a matter of law.

## IV.  CONCLUSION

For all of the foregoing reasons, it is **ORDERED** that the defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 13).   Specifically, genuine issues of material fact preclude judgment as a matter of law on the claim of excessive force brought against Henry in his personal capacity; summary judgment is **DENIED** as to this claim.   There are no genuine issues of material fact concerning any of the remaining claims, and the defendants are entitled to judgment as a matter of law.   Accordingly, summary judgment is **GRANTED** as to the remaining claims.

**DONE** this 26th day of September, 2017.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE